**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Anthony Bruce CANNON,
Defendant–Appellant.**

No. 92–10266.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 13, 1994.

Decided Feb. 4, 1994.

Rehearing and Rehearing En Banc
Denied Aug. 8, 1994.

Estelle A. Schleicher, Kimball J.P. Sargeant, Schleicher & Sargeant, Sacramento, California, for the defendant-appellant.

Benjamin B. Wagner, Assistant United States Attorney, Sacramento, California, for the plaintiff-appellee.

Before: GOODWIN, WIGGINS and BRUNETTI, Circuit Judges.

GOODWIN, Circuit Judge:

Anthony Bruce Cannon appeals his conviction for drug trafficking and money laundering in violation of 21 U.S.C. §§ 841(a)(1), 856, and 18 U.S.C. § 1956(a)(1)(B)(i). He argues that the district court erred in denying his motion to suppress evidence. We affirm.

On March 30, 1990, Judge Gary Ransom of the Sacramento County Superior Court issued a search warrant authorizing police to search Cannon, two residences, a certain white Nissan Sentra, and other property, for evidence relating to drug trafficking. Later that evening, a confidential informant told police that Cannon was in Oak Park with cocaine and that Cannon's white Nissan Sentra was parked at a certain intersection near the park. This information was consistent with previous reports about Cannon's drug

trafficking recounted in the search warrant affidavit. Police proceeded to the intersection and located the car.

In order to confirm that Cannon was in fact driving the car, the investigating officers asked a uniformed officer, Glenn Walters, to effect a traffic stop. Because the officers had learned that Cannon did not have a valid driver's license, Walters stopped Cannon pursuant to Cal.Veh.Code § 14601.1, 40000.-11, under which driving with a suspended license is a misdemeanor. He did not rely on the search warrant, which was not authorized for nighttime service.

After Walters pulled him over, Cannon admitted that he did not have a driver's license, but provided a California ID card. Walters asked Cannon to exit the car and performed a pat search, discovering a pager in Cannon's pocket. He then asked Cannon to sit in his patrol car while he ran a computer check on the ID card. The computer check confirmed that Cannon's license was suspended.

After receiving this information, Walters asked Cannon's permission to search the car. Cannon replied "sure, go ahead" and did not protest when Walters searched under the hood, in the passenger compartment and inside the trunk. Walters found a mobile phone in the glove compartment and more than $16,000 in large bills in the trunk. After finding the cash, Walters radioed the investigating officers waiting some thirty feet away. They arrived, found cocaine residue, and formally arrested Cannon.

Police then obtained an endorsement for nighttime service and executed the search warrant, finding additional incriminating evidence at each of the residences listed in the warrant. In addition, Michele Tillmon, who lived with Cannon at one of the residences, led them to a third apartment where they saw rock cocaine in plain view. After obtaining a second warrant, police seized more than ten kilograms of cocaine, cocaine base and materials consistent with the manufacture of cocaine from this apartment. Cannon was thereafter indicted for drug trafficking and various money laundering offenses.

Before trial, Cannon timely moved to suppress the evidence found in his car, residences and other locations, arguing that Walters' stop was illegal, that Walters did not ask permission to search the car, that any consent Cannon gave did not include the trunk of the car, and that the warrant was not supported by probable cause. At a suppression hearing, Cannon testified that he had not given Officer Walters permission to search his car. Walters testified that Cannon had told him to "go ahead." The court found that Cannon had freely and voluntarily given his consent and ultimately rejected all of Cannon's Fourth Amendment claims.

## I. VALIDITY OF THE TRAFFIC STOP

Cannon first contends that Officer Walters's initial stop was illegal because Walters used the driving violation as a pretext to investigate Cannon's drug trafficking. *United States v. Gutierrez–Mederos*, 965 F.2d 800, 802 (9th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1315, 122 L.Ed.2d 702 (1993). He contends that all of the evidence found during the stop, as well as the evidence later found in his residences and storage locker, should have been suppressed as fruit of an illegal stop. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). We disagree.

"A pretextual stop occurs when the police use a legal justification to make the stop in order to search a person or place, or to interrogate a person, for an unrelated serious crime for which they do not have the reasonable suspicion necessary to support a stop." *United States v. Guzman*, 864 F.2d 1512, 1515 (10th Cir.1988).[1] In the absence of

---

1. The government argues that the pretextual stop cases do not even apply to Cannon's case, as these cases are based on a concern that officers will use traffic laws to circumvent the Fourth Amendment when they do not have probable cause to stop an individual for a more serious offense. The government argues that the officers could have stopped Cannon even if he had a valid license, because the search warrant and the informant's tip established probable cause and the automobile exception to the warrant requirement obviated the need for a warrant endorsed for night service. *California v. Acevedo*, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991). Because we find that the stop was not pretextual, we need not address this argument.

some limit on police power to make such stops, "thousands of everyday citizens who violate minor traffic regulations will be subject to unfettered police discretion as to whom to stop." *Id.* at 1516. Given the pervasiveness of minor regulations, who police actually stop may depend on arbitrary or discriminatory characteristics. *Id.* Courts have long recognized that such arbitrariness is unreasonable within the meaning of the Fourth Amendment. *Id.* at 1516–17 (citations omitted).

However, recognizing this problem has proved easier than solving it. Devising appropriate and workable formulas for limiting police discretion has proved difficult, and circuit courts now conflict on the proper standard for evaluating "pretextual stop" claims. *Cummins v. United States,* — U.S. —, —, 112 S.Ct. 428, 429, 116 L.Ed.2d 448, 449 (1991) (White, J., dissenting from denial of certiorari). In some circuits, evidence discovered following a traffic stop is admissible as long as a reasonable officer *could* have made the stop. *Id.*[2] These circuits simply ask (1) whether the arresting officer had probable cause to believe the defendant was committing a traffic offense and (2) whether municipal law authorizes a stop for such an offense. *Trigg,* 878 F.2d at 1041.

Other circuits have adopted a more stringent "would have" test, asking not whether a reasonable officer *could* have made the stop, but whether a reasonable officer *would* have

made the stop, absent his unrelated suspicions. *Guzman,* 864 F.2d at 1517; *United States v. Smith,* 799 F.2d 704, 709 (11th Cir.1986). These courts inquire not only into the technical legality of the stop, but also into its conformity with regular police practices. *Guzman,* 864 F.2d at 1515; *Smith,* 799 F.2d at 710 (discussing whether a reasonable officer would stop a car to investigate drunk driving based on the defendant's driving).

■ Cannon argues that, in Ninth Circuit, the validity of a so-called pretext stop depends on the state of mind of the stopping officer. He contends that his stop was illegal because Walters would not have made the stop had he not been concerned about Cannon's drug trafficking.

Some of our language has implied that this subjective inquiry is required. *See, e.g., United States v. Smith,* 802 F.2d 1119, 1124 (9th Cir.1986) ("[w]hether an arrest is a mere pretext to search turns on the motivation or primary purpose of the arresting officers").[3] However, in none of these cases have we held a search invalid based solely on the officer's subjective state of mind.[4]

Most commentators and circuit courts, both those adopting the "would have" and those adopting the "could have" standards, agree that the validity of a so-called pretext stop should depend on the objective facts and circumstances of the stop, rather than on the subjective intent of the officer. *Guzman,* 864 F.2d at 1515 (citing *Smith,* 802 F.2d at 1124

**2.** *See, e.g., United States v. Ferguson,* 8 F.3d 385, 388–93 (6th Cir.1993) (en banc); *United States v. Hassan El,* 5 F.3d 726, 729–31 (4th Cir.1993) (petition for cert. filed); *United States v. Cummins,* 920 F.2d 498 (8th Cir.1990), *cert. denied,* — U.S. —, 112 S.Ct. 428, 116 L.Ed.2d 448 (1991); *United States v. Trigg,* 878 F.2d 1037, 1038–43 (7th Cir.1989), *appeal after remand,* 925 F.2d 1064, *cert. denied,* — U.S. —, 112 S.Ct. 428, 116 L.Ed.2d 448 (1991); *United States v. Causey,* 834 F.2d 1179 (5th Cir.1987) (en banc).

**3.** *See also United States v. Mota,* 982 F.2d 1384 (9th Cir.1993) (quoting *Smith,* 802 F.2d at 1124); *United States v. Huffhines,* 967 F.2d 314, 317–18 (9th Cir.1992) (noting that "[t]here is no evidence that [the police officer's] motive for confronting [defendant] was anything other than to investigate" a citizen's complaint); *Gutierrez–Mederos,* 965 F.2d at 802 ("To evaluate ... appellant's claim [that the stop was pretextual] we

must review the district court's factual finding regarding the motivation or primary purpose of the arresting officer."); *United States v. Brewer,* 947 F.2d 404, 411–12 (9th Cir.1991) (remanding to determine whether the traffic violations were a pretext for the stop); *United States v. Lillard,* 929 F.2d 500, 502 (9th Cir.1991) (noting that the officer testified that he "would have stopped [the defendant] anyway because of his speeding and careless driving.").

**4.** "In fact, in all of these cases except *Mota,* we upheld the stop in question. Our decision today is not inconsistent with *Mota,* as we did not base our decision in *Mota* on the arresting officer's subjective state of mind. Rather, we found the arrest and search incident to arrest invalid because state law did not authorize a custodial arrest for operating a business without a permit. 982 F.2d at 1387–88. This is consistent with the standard we announce today."

as the lone exception) (other citations omitted); *see also United States v. Arra,* 630 F.2d 836, 845 n. 12 (1st Cir.1980) (emphasizing the futility of inquiring into an officer's subjective state of mind); A. Amsterdam, "Perspectives on the Fourth Amendment," 58 Minn.L.Rev. 349, 437 (1974) (same). The "would have" circuits ask whether a reasonable police officer would have stopped the defendant for the traffic violation, absent his unrelated suspicions, not whether the particular officer who made the stop was motivated by his suspicions or the traffic violation. *Guzman,* 864 F.2d at 1516–17 (emphasizing that this standard is nonetheless more stringent than the "could have" test because it requires courts to inquire not only into the technical legality of the stop but also into police practices).

The Supreme Court has also emphasized that, in general, "[w]hether a Fourth Amendment violation has occurred 'turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time' and not on the officer's actual state of mind at the time the challenged action was taken." *Maryland v. Macon,* 472 U.S. 463, 470–71, 105 S.Ct. 2778, 2783, 86 L.Ed.2d 370 (1985) (quoting *Scott v. United States,* 436 U.S. 128, 137, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978)).[5]

■ We have recently said that an inventory search is valid, even if the searching officer had an investigatory motive, as long as the officer would have conducted the search in question anyway pursuant to police inventory practices. *United States v. Bowhay,* 992 F.2d 229, 231 (9th Cir.1993) (noting that "[w]hen the police conduct would have been the same regardless of the officer's subjective state of mind, no purpose is served by attempting to tease out the officer's 'true' motivation.") (citations omitted); *see also United States v. Lillard,* 929 F.2d 500, 502 (9th Cir.1991) (stop valid regardless of officer's motivation where officer testified he "would have" stopped the driver anyway for reckless driving). In light of *Bowhay,* *Lil-*

*lard,* the Supreme Court's emphasis on objective reasonableness in Fourth Amendment jurisprudence, and the persuasive authority from other circuits, we reject Cannon's contention that the validity of a pretext stop should be determined by the subjective intent of the stopping officer. Rather, we treat our previous cases as consistent with the Tenth and Eleventh Circuits' objective "would have" standard. As we emphasized in *Lillard* and *Bowhay,* courts should inquire whether a reasonable officer "would have" made the stop anyway, apart from his suspicions about other more serious criminal activity.

■ From any objective standpoint, Cannon's stop was legal. Driving with a suspended license is a misdemeanor and grounds for arrest. Cal.Veh.Code § 14601.1, 40000.11. It is a serious offense for which any reasonable officer would stop a driver. Walters had probable cause to believe that the white Nissan's driver did not have a license. His fellow officers had personally reviewed Cannon's DMV records and told him that Cannon did not have a license. *United States v. Angulo–Lopez,* 791 F.2d 1394, 1397 (9th Cir.1986); *United States v. Beusch,* 596 F.2d 871, 874 (9th Cir.1979) (police officers presumed reliable). These officers had a reasonable suspicion that Cannon was in fact driving the car, based on their previous observation of Cannon and the informant's tip. *United States v. Greene,* 783 F.2d 1364, 1367 (9th Cir.) *cert. denied,* 476 U.S. 1185, 106 S.Ct. 2923, 91 L.Ed.2d 551 (1986). The stop was lawful.

## II. ARREST

Cannon also contends that his arrest and detention were illegal. This argument is patently frivolous.

■ Once Cannon was validly stopped, Walters properly asked Cannon to exit his car. Cannon was stopped late at night in a secluded area known for drug trafficking. He was a suspected cocaine dealer. Thus,

---

**5.** *See also United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) (motivation of officer irrelevant where search made incident to lawful arrest and conforms with es-

tablished police practices); *United States v. Ruesga–Ramos,* 815 F.Supp. 1393, 1399 (E.D.Wash. 1993) (questioning *Smith 's* subjective language in light of *Maryland* and *Scott* ).

Walters reasonably performed a pat-down search for his own protection. *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968); *Greene,* 783 F.2d at 1368. Asking Cannon to sit in the back of the patrol car during the computer check on Cannon's identification card was similarly a reasonable precautionary measure, whether or not it constituted an arrest. *United States v. Parr,* 843 F.2d 1228, 1230 (9th Cir.1988) (defendant's failure to produce a valid drivers license "justified the request that he get out of his car and sit in the police car while a standard police identification process took place" but the request did not constitute an arrest) (quoting *United States v. Thompson,* 597 F.2d 187, 190 (9th Cir. 1979)).

Once Walters discovered the money, and the other officers discovered the cocaine residue, this evidence, together with the evidence in the affidavit, established probable cause to arrest for a felony.

### III. CONSENT TO SEARCH

Cannon also contends that Walters's search of his car was illegal (A) because Cannon did not voluntarily consent to the search and (B) because Walters' search of the trunk exceeded the scope of Cannon's consent.

### A. *Voluntary Consent*

██ We review the district court's finding that Cannon voluntarily consented to the search for clear error. *United States v. George,* 987 F.2d 1428, 1431 (9th Cir.1993). Voluntariness is a question of fact to be determined from the totality of the circumstances. *Illinois v. Rodriguez,* 497 U.S. 177, 183–89, 110 S.Ct. 2793, 2798–2802, 111 L.Ed.2d 148 (1990); *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 248–49, 93 S.Ct. 2041, 2047, 2058–59, 36 L.Ed.2d 854 (1973); *Gutierrez–Mederos,* 965 F.2d at 803.

The district court rejected Cannon's suppression hearing testimony that Walters did not ask for permission to search his car. Finding Walters's testimony more credible, the court determined that Walters asked for permission to search the vehicle and that

Cannon replied "sure, go ahead." These findings are not clearly erroneous. *Huffhines,* 967 F.2d at 317 (district court's credibility determinations are rarely overturned). Cannon has not shown that his consent was involuntary. No evidence suggests that Walters's conduct was coercive: Walters did not draw his gun, use force, or handcuff Cannon. He did not imply that he had the authority to search with or without Cannon's consent. Thus, the trial court's finding that Cannon voluntarily consented to the search of his car was not clearly erroneous. *Cf. Florida v. Jimeno,* 500 U.S. 248, 251–52, 111 S.Ct. 1801, 1804, 114 L.Ed.2d 297 (1991).

### B. *Scope of Search*

██ A trial court's findings about the scope of a suspect's consent are also reviewed for clear error. *Huffhines,* 967 F.2d at 319. "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Jimeno,* 500 U.S. at 249–52, 111 S.Ct. at 1803-04. Here, Cannon told Walters to "go ahead" and look in his car. He did not protest when Walters searched the interior of the car, including the glove compartment, or when Walters walked around to the trunk and used Cannon's key to open it. Failure to object to the continuation of a vehicle search after giving general consent to search "is properly considered as an indication that the search was within the scope of the initial consent." *United States v. Sierra–Hernandez,* 581 F.2d 760, 764 (9th Cir.), *cert. denied,* 439 U.S. 936, 99 S.Ct. 333, 58 L.Ed.2d 333 (1978). Although a suspect's consent to search a car may not automatically include consent to search the trunk, in the present case, the district court did not clearly err in finding that Cannon's consent included the trunk. *Cf. Jimeno,* 500 U.S. at 249–52, 111 S.Ct. at 1803–04; *United States v. Reeves,* 6 F.3d 660, 662 (9th Cir.1993) (defendant's permission to search a car justified search of containers within a car).

## IV. THE SEARCH OF THE RESIDENCES

■ Cannon also argues that the evidence found in his various residences is inadmissible (A) because it is fruit of his illegal detention and (B) because the warrant to search the residences was not supported by probable cause. Both of these contentions are meritless. Cannon's initial detention was not illegal[6] and the search warrant was valid.

■ A warrant is valid if the magistrate or judge had a substantial basis for concluding that the affidavit established probable cause. *United States v. Bertrand,* 926 F.2d 838, 842 (9th Cir.1991). The forty-two page affidavit filed in the present case easily meets this test. The affidavit recounted discussions with six separate confidential informants, with whom police met several times over an extended period. These informants consistently stated that Cannon was a "big time" or regular drug dealer who dealt in Oak Park. They gave detailed descriptions of Cannon, his associates, and his cars and they identified his photograph. Several provided a pager number.

Police officers confirmed some of these details. Business records confirmed that Cannon had in fact rented the pager in question. Police saw Cannon driving cars which fit the informants' descriptions and saw him frequently engage in counter-surveillance driving techniques, including sudden turns, U-turns, driving above and below speed limits, driving around a block several times and parking in open areas for long periods. Cannon appeared to possess several residences and cars, but did not have a job.

In addition, a probation officer discovered that one of his probationers was carrying cocaine and an address book listing Cannon's initials, "A.C.", and his pager number. A second individual arrested in Oak Park for cocaine possession was carrying a piece of paper listing the notation "AC" and Cannon's pager number. A probation search of a third individual, Cannon's cousin, whom informants had identified as a person who sold cocaine for Cannon, yielded 52.5 grams of cocaine, a scale, over $26,000 in cash, evidence of manufacturing rock cocaine, and photographs of Cannon.

Cannon argues that the affidavit fails to establish probable cause because some of the informants did not give dates detailing when they had personally seen Cannon with cocaine and others had only personally observed Cannon with cocaine several months previously. This argument is nonsense. The information in the affidavit suggests that Cannon was involved in a long-term, regular, drug trafficking business. The informants' statements supported this theory and were not so stale as to be inadequate. *See, e.g., United States v. Hernandez–Escarsega,* 886 F.2d 1560, 1566 (9th Cir.1989), *cert. denied,* 497 U.S. 1003, 110 S.Ct. 3237, 111 L.Ed.2d 748 (1990) (where the affidavit tends to establish the existence of a well-entrenched ongoing narcotics operation, "staleness arguments lose much of their force."); *Angulo–Lopez,* 791 F.2d at 1399 ("With respect to drug trafficking, probable cause may continue for several weeks, if not months, of the last reported instance of suspect activity.").

Cannon's argument that the informants are not reliable has the indicia of something mindlessly taken from a Fourth Amendment check list. Each informant's statement was corroborated by overlapping information provided by other informants and by independent police work. *Hernandez–Escarsega,* 886 F.2d at 1566. The affidavit provided a substantial basis for Judge Ransom's probable cause determination.

Cannon's conviction is AFFIRMED.

---

6. Even if the initial detention was illegal, most of the evidence discovered in the subsequent searches would be admissible under the independent source or inevitable discovery rules. *Murray v. United States,* 487 U.S. 533, 537, 108 S.Ct. 2529, 2533, 101 L.Ed.2d 472 (1988); *United States v. Salas,* 879 F.2d 530, 537–38 (9th Cir.), *cert. denied,* 493 U.S. 979, 110 S.Ct. 507, 107 L.Ed.2d 509 (1989); *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); *United States v. Mancera–Londono,* 912 F.2d 373, 376 (9th Cir.1990). Police had a warrant to search Cannon's residences even before the traffic stop and would have searched these locations (except for one storage locker) even if Walters had not stopped him.