39 F.3d 1189
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ridge Harvey DAWSON, Defendant-Appellant.
 No. 93-10700.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 5, 1994.
Decided Oct. 31, 1994.
 
 Before: SKOPIL, SCHROEDER and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Las Vegas police officers conducting a narcotics stakeout near the Moulin Rouge were told by a spotter that he had seen a white Thunderbird driving suspiciously into and out of the hotel parking lot, and that a man who got into the car appeared to be James Walker, whom the officer knew had an outstanding warrant for possession of narcotics with intent to sell. Officers Kelly and O'Leary followed the car to arrest Walker. The car, driven by Ridge Dawson, was clocked at 45 m.p.h. in a 25 m.p.h. zone, rolled through a stop and had a defective taillight; another police car, not involved with the narcotics investigation, pulled in front of Kelly and O'Leary's car because of the traffic violations. After the stop, Kelly found crack cocaine in Dawson's car and a loaded gun under the driver's seat. Dawson appeals denial of his motion to suppress, his conviction for being a felon in possession of a gun, and his sentence. We affirm.
 
 
 3
 * Dawson argues that both reasons credited by the district court for the stop--Walker's outstanding warrant and the three traffic violations--were pretexts for searching the car, so the traffic stop violated his Fourth Amendment rights. He claims that the stop began when the officers began to follow the car, and that the real reason the officers stopped the car was to search it for drugs as part of their narcotics investigation for which, Dawson asserts, they lacked reasonable suspicion.
 
 
 4
 We disagree that the "stop" occurred before the Thunderbird was pulled over. See United States v. Lillard, 929 F.2d 500 (9th Cir.1991) (traffic stop not pretextual where van was stopped for speeding and careless driving even though violations did not occur until after police began tailing van driven by suspected methamphetamine manufacturer). It was, in any event, not pretextual. " 'A pretextual stop occurs when the police use a legal justification to make the stop in order to search a person or place, or to interrogate a person, for an unrelated serious crime for which they do not have the reasonable suspicion necessary to support a stop.' " United States v. Cannon, 29 F.3d 472, 474 (9th Cir.1994) (quoting United States v. Guzman, 864 F.2d 1512, 1515 (10th Cir.1988)). Apart from the three traffic violations Kelly and O'Leary saw as they followed Dawson (independently observed and pursued by a second police car not involved in a narcotics detail), Walker's outstanding warrant for drug trafficking was a legitimate reason for the stop.
 
 
 5
 Dawson argues that the magistrate's findings are clearly erroneous because Kelly failed to include Walker's warrant in his report and because a video tape of the arrest shows Kelly asking Walker for identification and if he was a felon. Dawson claims that the police did not know Walker was in the car and his presence was a post hoc pretext. The magistrate's findings are supported, however: Kelly testified that his report was only a "thumbnail sketch"; that the spotter, Officer Carlson, told him that the male passenger appeared to be Walker; that he knew about Walker's outstanding warrant; and that the purpose for the stop was to arrest Walker. As Walker's outstanding felony arrest warrant is a legitimate ground for stopping the car, the stop was not pretextual.
 
 II
 
 6
 Dawson argues that the court erred in permitting Kelly to testify at the suppression hearing that Carlson told him about spotting the white Thunderbird in the hotel parking lot and watching Walker get into the car. Hearsay is admissible in suppression hearings, United States v. Matlock, 415 U.S. 164, 172-75 (1974); United States v. Whitten, 706 F.2d 1000, 1019 (9th Cir.1983), cert. denied, 465 U.S. 1100 (1984); Fed.R.Evid. 104(a), and there is no authority for an exception when the hearsay declarant does not testify at trial. Accordingly, the district court did not abuse its discretion.
 
 III
 
 7
 Dawson argues that the district court abused its discretion by allowing the government to read portions of Walker's grand jury testimony into the record. Walker testified for the defense that he lied to the grand jury and only told the government what it wanted to hear; he had testified to the grand jury that Dawson had shown him a .357 revolver that he had with him in the car. On cross-examination, the government sought to impeach Walker by his grand jury testimony. Walker asserted his Fifth Amendment right not to testify on cross, but did testify further on redirect. Dawson therefore contends that Walker was "unavailable" and that the court erred in permitting cross-examination on his grand jury testimony without finding that it was trustworthy under Fed.R.Evid. 804(b)(5). We see no error in the government's use of Walker's grand jury testimony for impeachment. The court did not receive the testimony as an exhibit to go to the jury, and did not abuse its discretion in permitting Walker to be questioned about it.
 
 IV
 
 8
 Dawson argues that the court erred in sentencing him as an Armed Career Criminal based on three prior felony convictions. 18 U.S.C. Sec. 924(e). He claims that producing the transcript from a prior guilty plea proceeding in which he was not advised of his constitutional rights against self-incrimination and to confront adverse witnesses, see Boykin v. Alabama, 395 U.S. 238 (1969), met his burden of production in collaterally attacking that conviction. This argument is foreclosed by Custis v. United States, 114 S.Ct. 1732 (1994) in which the Court held that, other than in cases where a defendant is not apprised of his right to appointed counsel, Sec. 924(e) does not allow for collateral attacks of prior state convictions. Id. at 1738-39. As Dawson does not contend that his predicate convictions were uncounseled, he was properly sentenced based on them.
 
 
 9
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3