**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Pedro Pablo HERNANDEZ,**
**Defendant–Appellant.**

No. 94–30109.

United States Court of Appeals,
Ninth Circuit.

Submitted Feb. 9, 1995.*

Decided May 17, 1995.

* This panel unanimously agrees that this case is appropriate for submission without oral argu-   ment. Fed.R.App.P. 34(a); 9th Cir.R. 34–4.

Arturo Hernandez, San Jose, CA; Santiago E. Juarez, Espanola, NM, for defendant-appellant.

Klaus P. Richter, Asst. U.S. Atty., Billings, MT, for plaintiff-appellee.

Before: WRIGHT, HALL, and WIGGINS, Circuit Judges.

Opinion by Judge HALL; Dissent by Judge WIGGINS.

CYNTHIA HOLCOMB HALL, Circuit Judge:

We are called upon to decide whether the police used an alleged parking violation as a pretext to search for evidence of an unrelated, more serious offense. We hold that the stop was pretextual and that the district court erred by failing to suppress the fruits of the search.

## I.

At the time of the arrest, appellant Pedro Hernandez was on parole from state prison for a felony drug conviction. He attracted the attention of local police, who were aware of his conviction and suspected that he once again was involved in illegal drug activity.

Officer Lon Bomar of the Montana Highway Patrol was patrolling Interstate 90 when he noticed Hernandez driving a Chevrolet car on a frontage road parallel to the interstate. Officer Bomar suspected that Hernandez was speeding but could not clock his speed, so he turned off the interstate and followed him on the frontage road.

Officer Bomar spotted Hernandez's Chevrolet parked on Scott Street, an unpaved street just off the interstate. It was parked behind a Cadillac in which Hernandez and a man later identified as Anthony Kim Martinez were sitting. Both cars were parked on the right hand side of the street, within a foot or two of some bushes growing along the side of the road. The cars were not blocking traffic; plenty of room remained for other vehicles to pass. Officer Bomar pulled up behind Hernandez's Chevrolet, turned on his emergency flashers, called for backup, and left his vehicle to investigate. He later testified that he wanted "to see if there was a reason they were parked on the roadway, or if one of the vehicles had broken down and w[as] in need of assistance."

Officer Bomar asked Martinez why he was parked there. Martinez said that he and Hernandez had just met to talk. Officer Bomar decided to cite both vehicles for parking violations. He later admitted that he had no other cause to detain or investigate the two men.

When officer Bomar's backup arrived, the officers questioned the two men and searched their vehicles. They found $4,700 in cash, approximately fifteen pounds of marijuana, and a loaded handgun which later turned out to be stolen. They then decided to search Hernandez's residence, where they found ammunition that appeared to match the stolen gun and a substantial amount of cash.

A federal grand jury indicted Hernandez on one count of conspiracy to possess with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846 and 18 U.S.C. § 2 (Count I), one count of possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count II), one count of possession of a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1) (Count III), and one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count IV).[1]

Hernandez moved to suppress the evidence, claiming that the searches violated his Fourth Amendment rights. The district court denied the motion. A jury found him guilty on Counts I and IV. The court sentenced him to 120 months and a supervised release term of four years. He now appeals.

## II.

■ Hernandez contends that the initial stop was illegal because officer Bomar used an alleged parking infraction as a pretext to search for evidence of Hernandez's drug involvement. He argues that all evidence found during the stop, as well as that later collected at his residence, should have been suppressed as the fruit of an illegal search and seizure. We agree.

■ We begin our analysis from the premise that our pretextual stop doctrine does not prohibit the use of evidence serendipitously gathered as part of a legitimate traffic stop. Rather, " '[a] pretextual stop occurs when the police use a legal justification to make the stop in order to search a person or place, or to interrogate a person, for an unrelated serious crime for which they do not have the reasonable suspicion necessary to support a stop.' " *United States v. Cannon*, 29 F.3d 472, 474 (9th Cir.1994) (quoting *United States v. Guzman*, 864 F.2d 1512, 1515 (10th Cir.1988)).

■ Rather than examining the subjective motivations of individual officers, we apply an objective "reasonable officer" test to determine whether a particular stop is pretextual.[2] *Cannon*, 29 F.3d at 475–76 (surveying Ninth Circuit case law and concluding that our pretextual stop doctrine employs an objective test). We focus on the objective facts and ask whether a reasonable officer, given the circumstances, would have made the stop absent a desire to investigate an unrelated serious offense. *Id.* at 476; *Guzman*, 864 F.2d at 1517 (citing *United States v. Smith*, 799 F.2d 704, 709 (11th Cir.1986)). In making this inquiry, we often find it helpful to determine whether the stop conformed to regular police practices. *See Cannon*, 29 F.3d at 476; *Guzman*, 864 F.2d at 1518 (remanding for determination of whether New Mexico police routinely stop seat belt violators).

1. Martinez was named in counts I and II of the same indictment. Martinez pled guilty and later testified as a government witness at Hernandez's trial.

2. The subjective intentions of an officer, of themselves, do not turn a legitimate stop into an unconstitutional search and seizure. A stop is not pretextual because the stopping officer secretly hopes to find evidence of greater wrongdoing; rather, a stop is pretextual because the facts of a case suggest that a reasonable officer would not have pursued the minor offense absent a desire to investigate an unrelated, more serious offense. *Cannon*, 29 F.3d at 474; *Guzman*, 864 F.2d at 1517–18.

Any suggestion to the contrary in *United States v. Millan*, 36 F.3d 886 (9th Cir.1994), is beside the point, because all three members of the *Millan* Court analyzed the pretextual stop issue according to the "reasonable officer" standard and concluded that the stop in question was objectively pretextual. 36 F.3d at 889–90; *id.* at 890–91 (Hall, J., concurring). Similarly, although the majority in *United States v. Perez*, 37 F.3d 510 (9th Cir.1994), found the case law confusing, it also analyzed the pretextual stop inquiry according to our objective "reasonable officer" standard. *Id.* at 513 (concluding that "any reasonable officer would have made the stop under the circumstances present here").

The government argues that the police would have stopped Hernandez to cite him for a parking violation, even absent a desire to search for contraband. This argument fails because no reasonable officer would have suspected that Hernandez was parked illegally under Montana law.

■ Hernandez and Martinez were cited for violating Mont.Code Ann. § 61–8–353, which provides, in relevant part:

> Upon any highway *outside of a business or residence district* no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main-traveled part of the highway when it is practical to stop, park, or so leave such vehicle off such part of said highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles.

Mont.Code Ann. § 61–8–353(1) (1993) (emphasis added). By its very terms, this provision applies only to vehicles parked on a "highway *outside* of a business or residence district." *Id.* (emphasis added). It does not, in other words, apply to vehicles parked within a business or residence district.

The district court found that Hernandez and Martinez parked their vehicles squarely within a business district as defined by the motor vehicle code.[3] This finding is not clearly erroneous. *See United States v. Becker*, 23 F.3d 1537, 1539 (9th Cir.1994) (reviewing factual findings for clear error). Officer Bomar testified at the suppression hearing that the vehicles were parked "*right next to* ... Louie and Dean's Truck Salvage" on Scott Street. In addition, Leslie Frank, who managed Orr's Truck Salvage on Scott Street, and James Schmid, a local businessman, described Scott Street as an industrial district, with various businesses located up and down the street from where the vehicles were parked. Finally, photographs intro-

duced at trial make absolutely clear that Scott Street is located within a business district as contemplated by Mont.Code Ann. § 61–1–408.

■ Although we accept the district court's finding that Scott Street was located within a business district, we cannot agree with the district court's conclusion that the stop was not pretextual. *See Becker*, 23 F.3d at 1539 (reviewing legal conclusions de novo). We must presume that a reasonable officer knows the law he is charged with enforcing. Montana law does not prohibit parking on the side of a street in a business district. No reasonable officer would stop a motorist for illegally parking on a street outside of a business district when the motorist is parked "right next to" several businesses. The government has offered no other legitimate reason for the stop and, after reviewing the record, we find none.

Under these circumstances, we can only conclude that a reasonable officer in Bomar's position would not have stopped Hernandez absent a desire to investigate his suspicions of illegal drug activity. We therefore hold that the stop was pretextual. *See United States v. Millan*, 36 F.3d 886, 889 (9th Cir. 1994) (concluding that traffic stop for driving with a cracked windshield was pretextual because state law did not prohibit driving with a cracked windshield and government did not establish any other legitimate reason for the stop); *cf. United States v. Lillard*, 929 F.2d 500, 502 (9th Cir.1991) (stop was not pretextual because even though officers suspected defendant of drug trafficking, they would have made the stop anyway because defendant was carelessly speeding in violation of state law).

We are not dissuaded by the fact that Hernandez was actually involved in illegal drug activity. "[T]here is nothing new in the realization that the Constitution sometimes

---

3. The district court found that "[t]he vehicles were parked on a roadway next to a business property."

> Montana's motor vehicle code defines a "business district" as:
>
> > [T]he territory contiguous to and including a highway when within any 600 feet along such highway there are buildings in use for

business or industrial purposes, including but not limited to hotels, banks, or office buildings, railroad stations, and public buildings which occupy at least 300 feet of frontage on one side or 300 feet collectively on both sides of the highway.

Mont.Code Ann. § 61–1–408 (1993).

insulates the criminality of a few in order to protect the privacy of us all." *Arizona v. Hicks,* 480 U.S. 321, 329, 107 S.Ct. 1149, 1155, 94 L.Ed.2d 347 (1987) (Scalia, J.).

■ The consequence of finding that the stop was pretextual is that all tainted evidence must be excluded. *Wong Sun v. United States,* 371 U.S. 471, 487–88, 83 S.Ct. 407, 417–18, 9 L.Ed.2d 441 (1963). We conclude that the interrogation of Hernandez and Martinez and all subsequent searches resulted directly from the pretextual stop.[4] All evidence gathered as a result was tainted and should have been suppressed. *See Millan,* 36 F.3d at 890 (excluding all evidence that was the "fruit" of an illegal search). We so hold.[5]

REVERSED and REMANDED.

WIGGINS, Circuit Judge, dissenting:

I respectfully dissent. Contrary to the majority, I conclude that the initial stop of Hernandez's vehicle was not pretextual. Because I also conclude that the subsequent searches of Hernandez's vehicle and residence were permissible, and that sufficient evidence supported Hernandez's conviction on count II, I would affirm the judgment of the district court.

As the majority notes, our prior cases demonstrate some confusion about the proper test for determining whether a stop is pretextual. Op. 445–46 & n. 2. Even assuming the majority is correct that this circuit applies an objective "reasonable officer" test, however, I believe the majority has misapplied that test. The Fourth Amendment to the United States Constitution allows an officer to make an investigatory stop when he has an "articulable suspicion" that a law has been violated. *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889 (1968). A "reasonable officer" who has an articulable suspicion that a suspect has broken the law presumably would stop that suspect. The fact that the officer also may have hoped to discover evidence of other crimes

does not necessarily render the stop invalid. If a reasonable officer " 'would have' made the stop anyway," it is not pretextual. *See United States v. Cannon,* 29 F.3d 472, 476 (9th Cir.1994).

In this case, the stop was not pretextual because a reasonable officer would have stopped Hernandez and Martinez based on his articulable suspicion that they had parked illegally under Mont.Code Ann. § 61–8–353 (making it illegal to park on a highway outside of a business or residential district). The majority's contrary conclusion rests on its finding that the alleged offense occurred in a "business district," and thus did not in fact violate the state statute. The error in this analysis is that it assumes that a "reasonable officer" will only make a stop when the law *in fact* has been violated. The proper question, however, is not whether the officer *correctly* believes that an offense has been committed, but whether the officer has an *articulable suspicion* to believe an offense has been committed. *United States v. Millan,* cited by the majority, supports this view. In *Millan,* the court found the stop pretextual under the "reasonable officer" test where the government had established *neither* that the defendant's conduct (driving with a cracked windshield) was illegal *nor that the windshield's condition "actually appeared unsafe to the officers."* 36 F.3d 886, 889–90 (9th Cir.1994) (emphasis added). *Millan* thus implies that a stop may be objectively reasonable (and thus non-pretextual) where officers identify an apparently unsafe condition, even if the condition is not *actually* illegal.

In this case, the cars were parked on the travelling portion of Scott Street, even though they could have pulled onto the shoulder. Officer Bomar was familiar with the street and had not previously seen people park on the travelling part of the roadway. Photographs of the location disclose that the street is not obviously in a "business district." Even if Officer Bomar was mistaken that Hernandez and Martinez had parked

---

4. One of the officers admitted at the suppression hearing that all searches resulted from the initial stop.

5. Because we hold that the evidence in this case should have been excluded as the fruit of a pretextual stop, we do not address appellant's other arguments.

their cars illegally, this fact does not undercut his articulable suspicion for believing that an offense had been committed, and accordingly, it does not render the stop pretextual.

In addition to finding the initial stop of Hernandez permissible, I also conclude that the officers' subsequent conduct was proper and therefore does not provide a basis for suppressing any of the evidence. Furthermore, I reject Hernandez's argument that Martinez's "uncorroborated" testimony is an insufficient basis to sustain his conviction for possession with intent to distribute or aid or abet others in the distribution of marijuana. I therefore would affirm the district court's judgment in its entirety.