99 F.3d 1142
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Oneal WOODS, Defendant-Appellant.
 No. 96-1964.
 United States Court of Appeals, Seventh Circuit.
 Argued Oct. 2, 1996.
Decided Oct. 2, 1996.
Released October 10, 1996.
 
 Before POSNER, Chief Judge, and BAUER and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 Oneal Woods was convicted of one count of possession with intent to distribute cocaine base, 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, and sentenced to 175 months' imprisonment. Before trial, Woods moved to suppress evidence, arguing that the police stopped and arrested him and searched his car in violation of the Fourth Amendment. The magistrate judge recommended denial of the motion to suppress. The district court, finding the testimony at the suppression hearing consistent with the testimony at trial, adopted the magistrate's recommendation after the conclusion of evidence. In his appeal, Woods challenges the denial of his motion to suppress. We affirm.
 
 
 2
 A brief summary of the facts will suffice. On July 11, 1995, Detectives Jeffrey Micklitz and Randy Baier of the Milwaukee Police Department spotted Woods's car making an illegal U-turn. They followed the car while running a check on the car's license plate, which revealed that the license plate was suspended. Detectives Micklitz and Baier stopped the car, and asked Woods for his name. They ran a check on the name and learned that Woods's driver's license was suspended. The detectives then placed Woods under arrest for traffic offenses. Detective Baier called for a tow of Woods's vehicle. Meanwhile, Detective Micklitz performed what he testified to be an inventory search of the car. In searching the car, he found a brown plastic bag, which contained four knotted sandwich baggies filled with a chalky white substance (cocaine base) and a gram scale.
 
 
 3
 At the outset, it is helpful to note the arguments that Woods does not make. Woods concedes (grudgingly) that the stop did not violate the Fourth Amendment. In his view, the stop was a "sham detention," but one permitted under the Supreme Court's recent decision in Whren v. United States, 116 S.Ct. 1769 (1996).[1] Given that Woods does not challenge the arrest, it appears that he considers it a "sham arrest," but one likewise permitted under Whren.
 
 
 4
 However, Woods does argue that the "sham" or "pretextual" nature of the stop and arrest show that the search of his car was conducted as a general rummaging for the purpose of discovering evidence of a crime. He apparently relies on the statement in Florida v. Wells, 495 U.S. 1 (1990) that "an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence," id. at 4, and the indication in Colorado v. Bertine, 479 U.S. 367 (1987), that police may not conduct an inventory search "in bad faith or for the sole purpose of investigation," id. at 372.[2] However, Wells and Bertine do not always require a court to determine whether an inventory search had an investigatory motive, as Woods would have it. If an inventory search is conducted according to standardized police policy, the fact that the search "may also have had an investigatory motive does not invalidate it." United States v. Lomeli, 76 F.3d 146, 148 (7th Cir.1996) (citing United States v. Cannon, 29 F.3d 472, 476 (9th Cir.1994), and United States v. Frank, 864 F.2d 992, 1001 (3d Cir.), cert. denied, 490 U.S. 1095 (1989)).
 
 
 5
 The standard of review for the denial of a motion to suppress evidence obtained in an inventory search is set forth in Ornelas v. United States, 116 S.Ct. 1657 (1996). See United States v. Duguay, 93 F.3d 346, 349-50 (7th Cir.1996). Our court reviews the district court's findings of fact for clear error, giving "due weight to inferences drawn from those facts by resident judges and local law enforcement officers," while reviewing questions of law and mixed questions of law and fact de novo. Id. (quoting and citing Ornelas, 116 S.Ct. at 1663). The district court credited Detective Micklitz's testimony that he searched the car because it was stopped (awaiting impoundment) in a high crime area, and that he conducted the search pursuant to the Milwaukee Police Department's written policy. The court also credited the detective's explanations as to why he did not itemize or remove certain items. These determinations are findings of fact, and are not so implausible as to be clearly erroneous. See Lomeli, 76 F.3d at 149.
 
 
 6
 The question thus becomes whether the department's policy on inventory searches is satisfactory under the Fourth Amendment. The policy allows the officer to conduct an inventory search "[i]n order to safeguard citizen's property, protect the city from claims of theft or negligence, [and] protect police personnel from spurious claims." These are appropriate considerations. See Bertine, 479 U.S. at 372. The policy also requires that the search "encompass the entire vehicle accessible by key including the passenger compartment, glove box and trunk. All containers, whether locked or unlocked, shall be opened and their contents examined if accessible by key or by other means without causing damage." This policy provides sufficient standards for the scope of the search to satisfy the Fourth Amendment. See South Dakota v. Opperman, 428 U.S. 364 (1976); Wells, 495 U.S. at 4 (policies of opening all containers would satisfy the Fourth Amendment).
 
 
 7
 In sum, when a police officer has probable cause to stop and arrest a driver, see Whren, supra, he is entitled to conduct an inventory search of the car under a proper police policy, see Wells and Bertine, supra. We see no reason to disturb the district court's determination that Detective Micklitz followed department policy in conducting an inventory search of Woods's car, and see no Fourth Amendment problem with the search or policy. Accordingly, the judgment is AFFIRMED.
 
 
 
 [1]
 Whren held that the stop of a motorist who the police have probable cause to believe has committed a civil traffic violation is reasonable under the Fourth Amendment whether or not a reasonable officer would have been motivated to stop the car by a desire to enforce the traffic laws. Id. at 1771-72, 1777. Thus, contrary to Woods's suggestion, a stop for traffic violations is not a "sham" under the Fourth Amendment if the police have probable cause to make the stop
 
 
 [2]
 The Supreme Court recently revisited these statements in Whren, observing that they "explain that the exemption from the need for probable cause (and warrant), which is accorded to searches made for the purpose of inventory or administrative regulation, is not accorded to searches that are not made for those purposes." Whren, 116 S.Ct. at 1773 (citations omitted) (emphasis in original)