**UNITED STATES of America, Plaintiff,**

v.

**$639,470.00 U.S. CURRENCY, and 1988 Lincoln Continental VIN 1LNBM9843JY800878, its tools and appurtenances, Defendants.**

**Sergio Ramirez and Maria Ramirez, Claimants.**

**No. CV 93–5985–SVW(SHx).**

United States District Court, C.D. California.

Feb. 20, 1996.

Carla A. Ford, Asst. U.S. Atty., Nora M. Manella, U.S. Atty., Leon W. Weidman, Asst. U.S. Atty., Chief, Civil Division and Janet C. Hudson, Asst. U.S. Atty., Chief, Assets Forfeiture Section, U.S. Attorney's Office, Los Angeles, CA, for plaintiff.

Maxine I. Dobro, San Diego, CA, for defendant.

SECOND AMENDED ORDER GRANT-ING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO CLAIMANT SERGIO RAMIREZ AND DENYING CLAIMANT'S MOTIONS TO DISMISS, FOR JUDGMENT ON THE PLEADINGS, TO SUPPRESS, AND FOR RETURN OF PROPERTY

WILSON, District Judge.

This is a civil in rem forfeiture action brought by the United States against a vehi-

cle and an amount of U.S. currency. Claimant Sergio Ramirez has filed claims to both defendants. Plaintiff has filed motions for leave to amend its complaint to correct a typographical error [1] and for summary judgment. Claimant has filed motions to dismiss the complaint for lack of jurisdiction, for return of seized property, for judgment on the pleadings, and to suppress evidence. The Court has considered the parties' submissions, and concludes that it must grant plaintiff's motion for summary judgment. The Court will address the parties' arguments on each of the issues bearing on this conclusion.

## I. BACKGROUND

On March 7, 1995 claimant Sergio Ramirez was convicted of conspiracy to transport or possess narcotics in violation of Cal.Penal Code § 182.1 and Cal.Health and Safety Code §§ 11351 and 11352, and possession of more than $100,000 involved in the unlawful sale or purchase of a controlled substance in violation of Cal.Health and Safety Code § 11370.6. (*People v. Ramirez*, No. 93CF2742, Sup.Ct. Orange Cty).

The Court will briefly describe the events leading up to claimant's conviction. On April 13, 1993, an informant named Rafael Calvario told California Bureau of Narcotics Enforcement agent Richard Williams of a potential purchase of a large quantity of cocaine. On April 14, Calvario arranged with the seller to complete the transaction the following day, and informed Williams of the arrangements. When the parties to the transaction met on April 15 in the parking lot at the Laguna Niguel shopping center, they were under surveillance by a law enforcement team headed by Williams. Williams saw claimant meet with Calvario and observed the parties discussing the terms of the transaction. Calvario then met with Williams and informed him that claimant had requested 50 kilograms of cocaine and that Calvario, claimant, and the other individuals involved in the transaction had arranged to meet one hour thereafter. Calvario returned to the parking

lot at that time and the parties discussed the price of the cocaine to be purchased. Calvario and claimant agreed to contact each other later that day. That evening, Calvario and claimant agreed to return to the shopping center the following morning to complete a transaction for 50 kilos.

The following morning, April 16, 1993, Calvario spoke to claimant by telephone with Williams present. During this conversation, claimant and Calvario agreed to complete the transaction by switching vehicles later that day so that Calvario would end up with the money and claimant would get the cocaine. At about 1:25 p.m. on April 16, 1993, claimant called Calvario to inform him that claimant had arrived at the shopping center, the agreed meeting-place for the completion of the transaction. When Calvario arrived there, claimant told him that claimant had $650,000 and wanted 40 kilos of cocaine at the agreed-upon price of $14,800 per kilo. Claimant then showed Calvario two suitcases containing large quantities of cash in the trunk of a Nissan Maxima. Claimant and Calvario agreed to meet 30 or 40 minutes thereafter at a nearby Sav–On drugstore to complete the transaction. Calvario then saw claimant leave in the Maxima with a man later identified as Cesar Rodriguez.

The surveillance team followed and observed claimant and Rodriguez as claimant drove out of the shopping center and proceeded to make several turns into parking lots and a u-turn before heading north on Interstate 5. They then drove north on the 405 freeway, exited and doubled back south on the 405 to Ortega Highway, where they went east to a hotel parking lot. The surveillance team then saw claimant and Rodriguez remove the suitcases from the trunk of the Maxima and place them in the trunk of the defendant vehicle, a Lincoln Continental parked in the hotel parking lot. In the Continental, claimant and Rodriguez then drove east on Ortega before turning around and returning to I–5.

---

**1.** Plaintiff moved for leave to amend its complaint to state that its action against the defendant vehicle is being brought pursuant to 21 U.S.C. § 881(a)(4). The complaint erroneously referred to 21 U.S.C. § 881(a)(7), which applies to real property. Claimant did not oppose this proposed amendment. Pursuant to the Court's oral ruling at the hearing held in this matter on October 23, 1995, plaintiff filed a first amended complaint to correct this error.

At about 3:00 p.m., as claimant and Rodriguez proceeded north on I–5, Cal. Highway Patrol officer James Storment, who was aware of all of the foregoing, claims that he paced the Continental at about 70 miles per hour. Claimant conceded at the hearing held on October 23, 1995 on the instant motions that he in fact was driving 70 miles per hour. Storment pulled over the Continental and asked to see claimant's driver's license and registration. Claimant produced a California driver's license, as well as a California Vehicle Salesperson's license and a business card from his place of employment, World Auto Sales in National City, California. Claimant was unable to produce a vehicle registration. Storment then asked claimant to get out of the car, and out of Rodriguez' hearing, Storment asked claimant where he was coming from and where he was going. Claimant responded that he was coming from Temecula and going to Los Angeles "to visit." Claimant would not elaborate as to the purpose of his trip, and he identified Rodriguez only as "Raul." Storment then returned to the vehicle and asked Rodriguez where he was coming from and where he was going. Rodriguez replied that he and claimant were on their way from San Diego to the airport so Rodriguez could fly back to San Jose. Storment then requested and received claimant's consent to search the vehicle. Before Storment began to search, claimant told him that claimant was carrying more than $10,000, which he was going to use to buy cars at an auction so that he could resell them as part of his business at World Auto Sales. Claimant then opened the trunk for Storment, and Storment found the cash in the two suitcases. Storment questioned claimant as to the amount of money he was transporting, and claimant responded that he had about $600,000 which he was going to use to buy 30 cars. When Storment began to search the suitcases, Rodriguez fled. Rodriguez was caught soon afterward, and both he and claimant were arrested and booked for violation of Cal.Health and Safety Code

§ 11370.6, possession of more than $100,000 involved in a drug transaction.

Claimant was taken to the Orange County jail, and the currency ($639,470.00) and the vehicle (the Continental) were seized by Bureau of Narcotics Enforcement agents. Plaintiff states that on April 19, 1993, three days later, CHP officer Morrison brought "Barry," a drug-sniffing dog, to conduct a drug sniff of the currency. Plaintiff further states that "Barry" alerted to the currency, which indicates the presence of the odor of narcotics on the currency.

No agency of the state of California initiated any forfeiture proceeding with regard to either the currency or the vehicle. Instead, on May 25, 1993, BNE requested that the federal government "adopt" the seizure of the defendants and commence federal forfeiture proceedings. Plaintiff recommended approval of the request for adoption on June 30, 1993.[2] It is unclear exactly when the defendants were transferred to the custody of the federal government. On October 1, 1993, plaintiff filed its complaint for forfeiture in rem pursuant to 21 U.S.C. § 881. An arrest warrant was served upon the defendants on November 4, 1993, and plaintiff published an official notice of forfeiture pursuant to Supplemental Rules of Civ.P. C(4) and C(6) on November 9, 1993. In addition, plaintiff mailed notices of forfeiture to claimant Sergio Ramirez at his residence, his business (World Auto Sales), and his attorney's office, as well as to Cesar Rodriguez (the passenger in the defendant vehicle) and to the registered owners of the defendant vehicle. Return receipts show that claimant Sergio Ramirez received such notice at his residence on November 17, 1993 and that his attorney received the notice on November 18, 1993. In December 1993, claimant asserted an ownership interest in the defendants. No other claim was filed during the claims period set forth in the official notice. This action was stayed pending claimant's trial in Orange County Superior Court which, it will

---

**2.** The parties appear to dispute the date of adoption. Plaintiff states that it occurred on June 16, 1993, and indeed, the notices it sent to claimant are dated June 17, 1993 and June 24, 1993. However, the signature on the form recommend-

ing adoption is dated June 30, 1993. The Court believes that this dispute is of no significance, so it will employ the later, June 30, date as the date of adoption in order to avoid any possible prejudice to claimant.

be recalled, resulted in claimant's conviction on March 5, 1995.

Maria Ramirez, Sergio Ramirez's wife, filed a claim to the defendants on September 22, 1995, nearly two years after the expiration of the claims period. She contends that she is entitled to one-half of the defendants as her community property. Plaintiff did not serve her with its motion for summary judgment, and she has not appeared in the proceedings on said motion. In deciding the instant motion, the Court will thus adjudicate only claimant Sergio Ramirez's asserted ownership interest in the defendants, and all references to "claimant" herein are intended to refer only to Sergio Ramirez.

## II. DISCUSSION

### A. Claimant's Motion to Dismiss for Lack of Jurisdiction

#### 1. Exclusivity of In Rem Jurisdiction

■ Claimant has moved to dismiss the complaint on the ground that this Court lacks in rem jurisdiction over the defendants. The first step in claimant's argument is the recitation of the well-established rule of ancient vintage that in rem jurisdiction must be exclusive, or in other words, that a state court and a federal court cannot possess simultaneous in rem jurisdiction over the same res. See, e.g., United States v. $270,000.00 in U.S. Currency, Plus Interest, 1 F.3d 1146, 1147–48 (11th Cir.1993); Penn General Casualty Co. v. Commonwealth, 294 U.S. 189, 195, 55 S.Ct. 386, 389, 79 L.Ed. 850 (1935). Claimant's second step is the argument that the Superior Court of Orange County had in rem jurisdiction over the defendants in this case before the institution of this federal action, and that the state court never relinquished jurisdiction; this Court, then, cannot possess jurisdiction. The Court disagrees.

The most obvious obstacle to claimant's argument is the fact that no forfeiture proceeding involving the defendants was ever brought in Orange County Superior Court or any other court of the state of California. Therefore, this case is simply nothing like $270,000; there, the state brought a forfei-

ture action and the state court dismissed it after ordering the state's key evidence suppressed, but the state court failed to order a disposition of the res. The state police then transferred the res to federal agents, who filed a federal forfeiture action. The Court held that the state court's in rem jurisdiction continued until the issuance of a final order disposing of the res. Since the state court did not issue such an order, it retained jurisdiction over the res, rendering the federal court's purported exercise of in rem jurisdiction void as an improper interference with the state court's jurisdiction. 1 F.3d at 1147–49. The comity concerns which weighed heavily upon the Court in $270,000 are absent in the instant case, where the state presented the res to the federal government for adoption and there was no state court proceeding to interfere with.

To circumvent this obstacle, claimant argues that jurisdiction over the defendants attached in Orange County Superior Court even though no forfeiture action was ever filed therein. In other words, "[t]he fact of its (the defendant res') seizure by state law enforcement personnel brought the defendant res under the jurisdiction of the state court." Claimant's Brief at 5.

What claimant cites in support of the above-quoted sentence is an "id." the referent of which the Court cannot identify, and Cal.Health and Safety Code § 11482.1, which does not exist. The Court has searched the Health and Safety Code for provisions standing for the proposition that state seizure automatically creates state court in rem jurisdiction, but has been unable to substantiate claimant's position. The closest thing to support for claimant's argument is found in § 11470. That section catalogs the types of property subject to forfeiture, and while it does not mention jurisdiction, subsection (h) provides that "all right, title, and interest in any personal property described in this section shall vest in the state upon commission of the act giving rise to forfeiture under this chapter." [3] This does not really help claim-

---

3. As recently amended, § 11470 provides that rights to the res vest in the state upon commission of the act giving rise to forfeiture "if the state or local governmental entity proves a violation of [the drug laws] in accordance with the burden of proof set forth in [the forfeiture laws]."

ant, though, because the vesting in the state of rights to the property is not the same thing as the creation of jurisdiction in the state court over that property where the state fails to bring the property into the state court for forfeiture.

Neither the authorities cited by claimant nor those revealed by the Court's own research provide support for claimant's argument. It is true that in a few cases, even where the state had not instituted any forfeiture proceedings, courts have held that there was no federal in rem jurisdiction over property seized by state law enforcement absent a turnover order from the state court formally transferring the property to the jurisdiction of the federal court. *See United States v. One 1987 Mercedes Benz Roadster,* 2 F.3d 241 (7th Cir.1993); *United States v. One 1979 Chevrolet C–20 Van,* 924 F.2d 120 (7th Cir. 1991); *Scarabin v. Drug Enforcement Admin.,* 966 F.2d 989 (5th Cir.1992). These cases hold, in other words, that state seizure by itself creates state court jurisdiction.

Unfortunately for claimant, however, these cases all turn on idiosyncratic provisions of state law that differ from the California law applicable in this case. In *Mercedes Roadster* and *C–20 Van,* the applicable Illinois law provided that the state circuit court for the place where the property was seized was required to order the disposition of the prop-

erty. *C–20 Van,* 924 F.2d at 122.[4] The Louisiana law applicable in *Scarabin* even more clearly provided that "the state court had exclusive legal control of the res by virtue of its search warrant and Louisiana law" even though no state forfeiture action was ever filed. 966 F.2d at 990. Since state law required that seized property "be disposed of according to law, under the direction of the judge" of the court that issued the warrant, the Court held that jurisdiction over the property attached in the state court immediately upon seizure. *Id.* at 993–94 (*citing* La.C.Cr.P. art. 167) Consequently, the state's purported informal transfer of the res to the DEA was void, and the federal court was without in rem jurisdiction. *See also Tracy v. State,* 655 N.E.2d 1232, 1236–37 (Ind.Ct.App.1995) (Friedlander, J., concurring and dissenting) (arguing that Indiana law provides for jurisdiction upon seizure).

In contrast, many cases have held that jurisdiction does not attach automatically upon seizure; these decisions view the institution of state forfeiture proceedings as the determinant of state in rem jurisdiction. In *United States v. One 1985 Cadillac Seville,* 866 F.2d 1142 (9th Cir.1989), California authorities had seized currency and a vehicle. The state filed suit for forfeiture of the currency, but took no action with respect to the seized vehicle. The Court held that there

---

Cal.Health and Safety Code, § 11470(h) (added by Stats.1994, c. 314 (A.B. 114), § 3, eff. Aug. 19, 1994). However, § 11494 provides that for property seized before January 1, 1994, as the defendants in this case were, "the proceeding to forfeit the property and the distribution of any forfeited property shall be subject to the provisions of this chapter in effect on December 31, 1993, as if those sections had not been repealed, replaced, or amended." The prior law, cited in the text, is arguably more favorable to claimant, since new § 11470 is by its terms inapplicable; no state or local governmental entity proved anything in accordance with any provision of the forfeiture laws here, because there was no state forfeiture action at all. Under the new law, then, claimant does not even get to the argument that the vesting in the state of rights to the property necessarily also creates jurisdiction over that property in the state court where the state fails to bring the property into the state court for forfeiture. Therefore, although it is not clear whether the jurisdictional question at issue here falls within the meaning of § 11494, the Court will apply the prior law.

4. Significantly, the court in *U.S. v. $62,600.00,* 899 F.Supp. 378 (N.D.Ill.1995) noted that the Illinois law applicable in *C–20 Van* and *Mercedes Roadster* is no longer in force. Rather than conferring on the state court the exclusive authority to act with respect to the seized property, the applicable law now also gives that power to state's attorneys. *Id.* at 379 (*citing* 720 I.L.C.S. 570/505(d)). In that case, as here, the seizure was made by state authorities who transferred the res to federal agents without obtaining a court order. The federal district court held that it had in rem jurisdiction despite the lack of a formal turnover order from the state court because the newly amended statute gave the state's attorney a concurrent right to transfer the res, rather than creating automatic jurisdiction in the state court as it had before. *Id.* This further buttresses the Court's conclusion that automatic jurisdiction upon seizure is a creature of statute, not a general or common-law rule.

could be no federal in rem jurisdiction over the currency because of the prior and continuing in rem jurisdiction of the state court. *Id.* at 1145–46. It was held to be immaterial that the state did not oppose the federal prosecution of the seizure and that the state case was inactive. *Id.* at 1145. With respect to the vehicle, though—as in the instant case—the state had never instituted forfeiture proceedings and no state court order had ever issued, leading the Court to conclude that the federal court had in rem jurisdiction over it. *Id.* at 1146.

■ Implicit in the Ninth Circuit's holding that the federal court properly exercised jurisdiction over the vehicle is the conclusion that under California law, the state's seizure of the vehicle did not create state court jurisdiction over it. A formal turnover order from the state court was thus required for the currency, but since there was no state court jurisdiction over the vehicle, no court order was necessary. The vehicle in *1985 Cadillac Seville* and the defendants in this case are identically situated: in both cases, state seizure was followed by extrajudicial transfer to federal law enforcement, in neither case were any state forfeiture proceedings instituted, and in both cases California law applied. On the authority of *1985 Cadillac Seville*, which is binding on this Court, this Court therefore holds that here as there, no state court in rem jurisdiction attached.[5]

The history of Cal.Health and Safety Code § 11470(i) sheds further light on the issue at hand. At one time, claimant's argument that seizure necessarily produces jurisdiction actually was the law in California under the above-cited subsection. It provided that "all moneys . . . seized in accordance with section 11488, shall, immediately upon being seized, come under the jurisdiction of the Superior Court. . . ." For several reasons, however,

this provision cannot help claimant. First, it was repealed as of January 1, 1989. Second, it applied only to the Los Angeles Police Department and the Los Angeles Sheriff's Department. Third, it did not apply to seizures of more than $50,000.

The Court finds it telling that the California legislature specifically provided for jurisdiction upon seizure in this subsection. Its affirmative act in so providing in this and only this subsection strengthens the Court's conclusion that the legislature's omission to do the same in the relevant Code sections means that it did not intend for jurisdiction to attach upon seizure generally.

The Court holds that no California state court ever had in rem jurisdiction over the defendants. The rule that in rem jurisdiction must be exclusive therefore does not mandate granting claimant's motion to dismiss for lack of jurisdiction.

### 2. Other Jurisdictional Arguments

Apart from his argument based on prior state court jurisdiction, claimant also argues that this Court does not have jurisdiction on the grounds that (1) the state failed either to hold the defendants as evidence or institute forfeiture proceedings within 15 days of the seizure as required by §§ 11488.1 and 11488.2; (2) the forfeiture proceedings were not instituted by the state attorney general or the Orange County district attorney as required by § 11488.1; and (3) the federal adoption was improper under the applicable federal guidelines.

Section 11488.2 provides that seized property must be returned if within 15 days of seizure, the seizing officer neither holds the property for use as evidence nor refers the matter for institution of forfeiture proceedings. In this case, the state requested feder-

---

5. *See also U.S. v. Certain Real Property,* 986 F.2d 990, 994–95 (6th Cir.1993) (applying Michigan law and rejecting argument that "the state courts had exclusive jurisdiction because the res was seized by state authorities pursuant to a state search warrant"; "the defining act for the exercise of state jurisdiction is the filing of a forfeiture complaint in state court"); *U.S. v. One 1986 Chevrolet Van,* 927 F.2d 39, 44–45 (1st Cir.1991) (Rhode Island; same); *U.S. v. $12,390,* 956 F.2d 801, 805–06 (8th Cir.1992) (Missouri; same);

*U.S. v. $134,920.00,* 25 F.3d 1051 (Table), 1994 WL 252702, *2–3 (6th Cir.1994) (unpublished disposition) (Tennessee; same); *$62,600.00,* 899 F.Supp. at 379 (applying Illinois statutes that had been revised since the Seventh Circuit's decisions in *C–20* and *1987 Mercedes Benz Roadster* to give state's attorneys power concurrent with state courts to dispose of seized property; same); *State v. Terry,* 159 Vt. 531, 621 A.2d 1285, 1286–87 (1993) (same).

al adoption 39 days after seizure, and claimant argues that this 24–day delay bars a subsequent action for forfeiture. In support of this argument, claimant relies on *People v. Superior Court (Drummer)*, 200 Cal.App.3d 105, 245 Cal.Rptr. 825 (2 Dist.1988).

In *Drummer*, the claimant sought dismissal of the forfeiture action on the ground that the seizing agency waited 69 days to refer the seizure to the district attorney, who then waited 20 days to file a petition for forfeiture. The Court held that the violation of § 11488.2's 15–day requirement did not require dismissal. Since "[a] statute of limitations as startlingly short as fifteen days should not be inferred from ambiguous language," the Court concluded that "the statute requires only that the police take prompt steps toward forfeiture if they intend to hold property not needed as evidence." *Id.* at 826.[6] In this case, the seizing agency referred the seizure for adoption 39 days after seizure, so it is difficult to see how the authority cited by claimant supports his position. In addition, at the October 23 hearing, claimant conceded that there was no statutory remedy under California law available to bar this federal proceeding on the ground that the state failed to follow the procedures required by state law.

Next, claimant attempts to argue that since § 11488.1 requires that "the Attorney General or the district attorney for the jurisdiction involved shall institute and maintain the proceedings," the federal government had no authority to bring this action. If claimant were correct, there could be no federal adoption of state seizures. This obviously is not the law. As plaintiff correctly observes, "§ 11488.1 does not prohibit adoption; it merely directs that a state forfeiture action, if brought, must be brought by the Attorney General or the district attorney in the district where the property was seized or a criminal action will be brought." Plaintiff's Brief at 8. Since there was no state forfeiture suit, these provisions are simply irrelevant.

Somewhat more plausible is claimant's argument that while adoption may be permissible, the purported federal adoption in this case was improper and thus ineffective. For support, claimant points to United States Department of Justice Directive No. 93–1 regarding general adoption policy and procedure, entitled "Thirty–Day Rule for Presentation for Federal Adoption." It provides as follows: "State and local agencies have thirty (30) calendar days from the date of the seizure to request a federal adoption. Waivers of the 30–day rule may be approved by the adopting federal agency where the state or local agency requesting adoption can demonstrate the existence of circumstances justifying the delay."

Since defendants were not presented for adoption until 39 days after their seizure, the letter of the "thirty-day rule" has indeed been violated. The fact remains, however, that the federal authorities approved the request for adoption despite its slight tardiness. The record does not disclose any showing by the state agency of circumstances justifying the delay; it is unknown whether any such circumstances were communicated informally to the federal authorities. In any event, Directive No. 93–1 does not appear to create any rights in a claimant; it appears to be designed instead as an internal guideline to assist the federal government in deciding whether to approve a request for adoption and to encourage states to present adoption requests sooner rather than later. Claimant has identified no authority, and the Court is aware of none, for the proposition that an adoption request made after the expiration of

---

**6.** The *Drummer* Court held that the state was obligated to return the property to the claimant because of the state's delay in filing the action, but that this in no way required dismissal of the forfeiture action. 245 Cal.Rptr. at 827. Claimant has not specifically argued that the state's breach of the 15–day period requires the return of defendants to him; he instead appears to base his motion for return of the defendants on the argument that plaintiff had no right to bring this action and this Court has no right to hear it. In view of the Court's conclusion that it does possess jurisdiction, and the teaching of *Drummer* that the necessity of returning property sought to be forfeited does not go to the government's ability to maintain an action for forfeiture, the Court declines to order the return of defendants to claimant. It would serve no conceivable purpose for the Court to order the return of defendants to claimant at the same time as it held claimant's interest in them to be forfeitable.

the 30–day period may be challenged by a claimant. On the contrary, as claimant notes, the real party in interest generally does not even receive notice that adoption has been requested; claimant therefore cannot convincingly contend he had a right to be heard in opposition to the adoption. *Madewell v. Downs,* 68 F.3d 1030, 1038–39 (8th Cir.1995) (no preseizure notice or hearing required for adoption); *United States v. One 1977 Mercedes Benz,* 708 F.2d 444, 450 n. 5 (9th Cir.1983). Moreover, claimant has not alleged any prejudice stemming from the nine-day delay, and the Court can conceive of none.

■ The Court concludes that adoption procedure is a matter between the state and federal authorities, and the federal government's approval of the state's request made late and in violation of state procedural rules was the end of the issue. *Madewell,* 68 F.3d at 1038 ("any constitutional infirmity in the *transfer* of the seized property does not taint the adoption of the seizure by the federal agency") (emphasis in original); *United States v. Winston–Salem/Forsyth County Bd. of Educ.,* 902 F.2d 267, 272 (4th Cir.1990) (United States "may adopt a seizure where there was no authority to transfer the property").

Since none of claimant's objections to this Court's jurisdiction has any merit, the Court will proceed to the other motions filed by the parties.

*B. Claimant's Motion to Suppress*

■ Claimant has moved this Court to suppress physical evidence allegedly seized in contravention of the Fourth Amendment. Specifically, claimant contends that the stop-and-search which resulted in his arrest and the seizure of the defendants was illegal as a pretextual stop. It is unclear whether this motion is directed solely at the seized currency or at both defendants, *see* Claimant's Brief at 8, so the Court will treat it as addressing both defendants. The exclusionary rule forbidding the admission of illegally seized evidence applies in civil in rem forfeiture pro-

ceedings. *See United States v. $191,910.00 in U.S. Currency,* 16 F.3d 1051, 1063 (9th Cir.1994).

■ First, the Court must determine whether claimant's suppression argument is barred by collateral estoppel, since he appears to have raised the same claim in his criminal prosecution in state court. Under California law, which this Court must look to in deciding this question,[7] "[t]he criteria for the application of collateral estoppel are: (1) the prior conviction must have been for a serious offense so that the defendant was motivated to fully litigate the charges; (2) there must have been a full and fair trial to prevent convictions of doubtful validity from being used; (3) the issue on which the prior conviction is offered must of necessity have been decided at the criminal trial; and (4) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior trial." *Ayers v. City of Richmond,* 895 F.2d 1267, 1271 (9th Cir.), (*citing McGowan v. City of San Diego,* 208 Cal.App.3d 890, 256 Cal.Rptr. 537, 539 (1989)).

At the hearing on October 23, 1995, claimant admitted that he had filed a motion to suppress in state court under Cal.Penal Code § 1538.5, based on the same pretextual stop argument as the instant motion, and that the motion was denied after a hearing. Claimant did not appeal the denial of the pretextual stop claim in state court. *See* Exhibit A to plaintiff's reply to claimant's opposition to summary judgment (claimant's notice of motion for suppression of both defendants and memorandum of points and authorities in support thereof); Exhibit B to plaintiff's opposition to claimant's motion to suppress (reporter's transcript of the testimony of Storment, the arresting officer, at the state court hearing on claimant's motion to suppress; the state court's denial appears on page 33).

■ With respect to the first of the four criteria for collateral estoppel, claimant's five-year prison sentence attests to the seri-

7. *See Ayers v. City of Richmond,* 895 F.2d 1267, 1270 (9th Cir.1990); 28 U.S.C. § 1738 (1994); *United States v. U.S. Currency, the Amount of $228,536.00,* 895 F.2d 908, 918 (2d Cir.), *cert. denied,* 495 U.S. 958, 110 S.Ct. 2564, 109 L.Ed.2d 747 (1990); *Marrese v. Amer. Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380–81, 105 S.Ct. 1327, 1331–32, 84 L.Ed.2d 274 (1985).

ousness of the offense for which he was convicted and his motivation to press fully his pretextual stop claim in his criminal trial. There is no allegation that claimant's trial in Orange County Superior Court was anything but full and fair, and the court only ruled on the issue on which estoppel is asserted after an evidentiary hearing at which claimant was able to cross-examine the arresting officer. The question whether the stop was pretextual was not a peripheral matter unnecessary to the conviction; it was a crucial issue and was separately and decisively litigated. Finally, claimant was the defendant in the criminal proceedings, so there is no unfairness in binding him to the Superior Court's conclusion that the stop was not pretextual. *Ayers,* 895 F.2d at 1271; *United States v. Real Property Located in El Dorado County at 6380 Little Canyon Road,* 59 F.3d 974, 979–80 (9th Cir.1995); *United States v. U.S. Currency in the Amount of $228,536.00,* 895 F.2d 908, 918–20 (2d Cir.), *cert. denied,* 495 U.S. 958, 110 S.Ct. 2564, 109 L.Ed.2d 747 (1990). Claimant argued at the October 23 hearing that he should not be estopped because he did not appeal the denial of his suppression motion in state court. The denial of claimant's suppression motion is no less binding and final for having been made by the trial court; affirmance upon appeal is not required for the denial to have collateral estoppel effect. Moreover, claimant stated that he did not appeal the denial because he feared that an appeal would invite a cross-appeal on a separate issue that could have been damaging to him. Such a strategic decision cannot defeat collateral estoppel where all four criteria for estoppel are amply met.

The Court therefore holds that claimant may not relitigate his claim that the traffic stop was pretextual. Furthermore, given the gravity of the issue and of this action, in an abundance of caution the Court has analyzed claimant's pretextual stop claim on the merits, and concludes that it must be rejected.

In order to prove that the traffic stop of claimant was pretextual, claimant must show that Officer Storment used "a legal justification to make the stop in order to search a person or place ... for an unrelated serious crime for which [he did] not have the reasonable suspicion necessary to support a stop." *United States v. Quintero-Barraza,* 57 F.3d 836, 840–41 (9th Cir.1995) (*quoting United States v. Cannon,* 29 F.3d 472, 474 (9th Cir.1994)). To determine whether a stop was pretextual, the Court must ask "whether a reasonable officer, given the circumstances, would have made the stop absent a desire to investigate an unrelated serious offense." *United States v. Hernandez,* 55 F.3d 443, 445 (9th Cir.1995) (*citing Cannon,* 29 F.3d at 476). The inquiry is thus objective; the officer's subjective state of mind is irrelevant.[8]

The Court is confronted with two issues. First, would a reasonable officer have stopped claimant if he or she had not known of claimant's suspected drug trafficking activity? Second, even if the answer to the first question is no, the stop cannot be pretextual if the officer in fact had the requisite reasonable suspicion to stop claimant with respect to the drug offenses, without relying on the traffic violation.

In two recent cases, the Ninth Circuit has found traffic stops to have been pretextual. As will become evident, neither is apposite to the instant case. In *Millan,* the officers' claimed ground for the stop was that Millan was driving a car with a cracked windshield. The Court found the stop objectively pretextual because the officers failed to establish either that driving with a cracked windshield was against the law in Nevada or that Millan's windshield appeared to constitute a safety hazard. 36 F.3d at 889. The officers

---

8. Until *Cannon,* it was unclear whether this Circuit applied an objective or a subjective test in this regard. The *Cannon* Court analyzed the Ninth Circuit precedents and other circuits' approaches to this issue and held that the law of the Ninth Circuit was the objective test that asks whether a reasonable officer 'would have' made the stop on the ground claimed to be a pretext if that officer had not had suspicions about other, unrelated criminal activity. *See* 29 F.3d at 475–76. Recent Ninth Circuit opinions have reaffirmed this objective test. *E.g., Quintero-Barraza,* 57 F.3d at 840–41; *Hernandez,* 55 F.3d at 445 & n. 2. *Cf. United States v. Millan,* 36 F.3d 886, 889–90 (9th Cir.1994) (applying subjective test in addition to objective test); *United States v. Perez,* 37 F.3d 510 (9th Cir.1994) (same).

thus had no legitimate reason to stop Millan, only the illegitimate reason of their desire to investigate potential criminal activity for which they did not possess the requisite reasonable suspicion.

In *Hernandez,* the officer stated that his reason for stopping Hernandez was that he was parked illegally. The Ninth Circuit held that the stop was pretextual because Hernandez in fact appeared to have been parked perfectly legally, and thus no reasonable officer could have suspected that he was parked illegally and stopped him on that basis. 55 F.3d at 446.

■ In this case, the ground alleged to be a pretext is that Officer Storment stopped claimant for speeding. Storment states that he paced claimant at about 70 miles per hour (in a 55 mph zone) and that a reasonable officer would have stopped claimant on that basis without regard to his suspected drug-related activity. Claimant, it should be recalled, conceded at the October 23 hearing that he was in fact travelling 70 miles per hour. Claimant argues that the fact that he was under surveillance by a team of 18 officers who were attempting to execute a reverse-sting operation on him demonstrates that the speeding violation was but a pretext.

The Ninth Circuit has rejected pretextual stop claims in two recent cases closely resembling the instant case. In *Quintero–Barraza,* the stated ground for the stop was that Quintero–Barraza was speeding. The Court held that it was objectively reasonable to stop a car travelling 75 miles per hour in a 65 mph zone. 57 F.3d at 841. Similarly, in *United States v. Lillard,* 929 F.2d 500 (9th Cir.1991), the Court held that it was objectively reasonable to stop Lillard for driving 70–75 miles per hour in a 55 mph zone, regardless of the fact that Lillard, like claimant here, had been under round-the-clock surveillance and was suspected of drug offenses. Even though the officer making the traffic stop knew this and, like Storment in this case, clearly hoped to uncover evidence of those more serious crimes, it was not pretextual for him to stop Lillard when Lillard was speeding carelessly. *Id.* at 502. *See also Perez,* 37 F.3d at 513 (not pretextual where Perez driving erratically); *Cannon,* 29

F.3d at 473–74 (not pretextual where police knew Cannon was driving without license, even though police had warrant to search Cannon and asked the stopping officer to make the traffic stop in order to skirt the problem that warrant was not authorized for nighttime service).

■ Based on these precedents, all binding on this Court, the Court is compelled to conclude that the traffic stop of claimant was not pretextual. In the alternative, the Court holds that the officers in any event had reasonable suspicion to stop claimant with respect to the drug offenses, without relying on the traffic infraction. Two days of intensive surveillance and detailed reports from an informant had supplied the officers with extensive knowledge of claimant's involvement in an imminent drug transaction. This knowledge easily qualifies as the articulable, reasonable suspicion required to effectuate a stop. For these several reasons, the Court denies claimant's motion to suppress physical evidence.

## C. Claimant's Motion for Judgment on the Pleadings

■ Claimant has moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). Claimant contends that a complaint for forfeiture is required to allege facts sufficient to establish probable cause, that plaintiff's complaint fails to do so, and that plaintiff is not entitled to amend its complaint in order to comply with this requirement.

The Supplemental Rules for Certain Admiralty Claims of the Federal Rules of Civil Procedure govern forfeiture complaints. 21 U.S.C. § 881(d). These Rules require more particularity than the ordinary Rules of Civil Procedure. For example, Supplemental Rule C(2) requires that a forfeiture complaint "describe with reasonable particularity the property that is the subject of the action and state that it is within the district ... and state the place of seizure ... and contain such allegations as may be required by [21 U.S.C. § 881(a)(4) and (a)(6) ]." Plaintiff's complaint clearly satisfies all of these requirements. Furthermore, Supplemental Rule E(2)(a) requires the complaint to "state

the circumstances from which the claim arises with such particularity that the ... claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Plaintiff's complaint also clearly satisfies this requirement. Specifically, it describes the traffic stop, the conflicting stories of claimant and Rodriguez, the search, Rodriguez' attempt to flee, and the drug-sniffing dog's alert to the currency. Claimant cannot seriously contend that the complaint fails to inform him of the facts and circumstances giving rise to the claim.

■ Claimant argues, however, that compliance with these Rules is not enough; the complaint must also show probable cause to forfeit the defendants. Claimant has not cited a single case that supports this proposition. It is true that the government is required to have probable cause for forfeiture "at the time it institutes forfeiture proceedings," meaning that it "may not rely on evidence acquired after the forfeiture complaint was filed." *United States v. $191,910.00 in U.S. Currency,* 16 F.3d 1051, 1071 (9th Cir. 1994). But "Rule E(2) does not require the government to meet, at the pleading stage, its ultimate trial burden of showing probable cause for forfeiture; rather, the government's complaint must establish only a reasonable belief that the government can show probable cause for forfeiture at trial." *United States v. $150,660.00,* 980 F.2d 1200, 1204-05 (8th Cir.1992). Plaintiff has met this standard with room to spare by recounting the events leading up to the seizure of the defendants. Plaintiff's failure to include in its complaint a detailed account of the surveillance of claimant and of the reverse-sting operation is immaterial.[9]

The Court holds that plaintiff met its burden under the pleading rules applicable to this action and therefore denies claimant's motion for judgment on the pleadings.

*D. Plaintiff's Motion for Summary Judgment of Forfeiture*

In this forfeiture action, claimant bears the burden of proving that the defendants should not be forfeited once plaintiff shows that it had probable cause to institute the action. 19 U.S.C. § 1615. Plaintiff therefore must show that it had probable cause to believe that the defendant vehicle was "used, or [was] intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment" of a controlled substance, subject to the common carrier and innocent owner defenses, 21 U.S.C. § 881(a)(4), and that the defendant currency was "furnished or intended to be furnished ... in exchange for a controlled substance," again subject to the innocent owner defense, 21 U.S.C. § 881(a)(7).

■ "The standard of probable cause to support a forfeiture is similar to that required for a search warrant." *United States v. One 1986 Ford Pickup,* 56 F.3d 1181, 1188 (9th Cir.1995) (*quoting $191,-910.00,* 16 F.3d at 1071). Probable cause means "less than prima facie proof but more than mere suspicion." *United States v. One 56–Foot Motor Yacht Named Tahuna,* 702 F.2d 1276, 1281 (9th Cir.1983); *$191,910.00,* 16 F.3d at 1071. "Statements of informants may support a finding of probable cause." *One 1986 Ford Pickup,* 56 F.3d at 1188. The government may rely upon circumstantial evidence and hearsay in establishing probable cause. *See United States v. $5,644,540.00 in U.S. Currency,* 799 F.2d 1357, 1363 (9th Cir. 1986); *United States v. $93,685.61 in U.S.*

---

9. Indeed, the Court believes that the complaint *does* show probable cause for forfeiture. The facts alleged in the complaint from which probable cause may be found include claimant's possession of an extremely large amount of cash, which is itself "strong evidence that the money was furnished or intended to be furnished in return for drugs," *United States v. $215,300 in U.S. Currency,* 882 F.2d 417, 419 (9th Cir.1989), *cert. denied,* 497 U.S. 1005, 110 S.Ct. 3242, 111 L.Ed.2d 752 (1990); the inconsistent and implausible stories given to the officers by claimant and Rodriguez; Rodriguez' attempt to flee; and the drug-sniffing dog's alert to the currency, which constitutes probative, if not dispositive, evidence of the currency's connection with a drug transaction, *id.; United States v. Dickerson,* 873 F.2d 1181, 1184 (9th Cir.1988); *but see United States v. U.S. Currency, $30,060.00,* 39 F.3d 1039 (9th Cir.1994). It should also be recalled that probable cause is a "minimal obligation" that can be met even without "introducing evidence that meets the ordinary criteria for trustworthiness and admissibility," *$191,910.00,* 16 F.3d at 1069; overwhelming and unimpeachable proof is clearly not necessary.

*Currency,* 730 F.2d 571, 572 (9th Cir.), *cert. denied,* 469 U.S. 831, 105 S.Ct. 119, 83 L.Ed.2d 61 (1984). Probable cause is determined by reference to the totality of the circumstances; "no single factor is dispositive." *$191,910.00,* 16 F.3d at 1071.

■ Plaintiff clearly had probable cause to institute this forfeiture action against both defendants. At the time it filed suit, plaintiff knew a large constellation of facts regarding the reverse-sting operation in which claimant was caught. (The fact that plaintiff did not include all of this information in its complaint is irrelevant; what is important is that it was within plaintiff's knowledge at the time it filed the complaint. *See supra* part II.C.) These facts and circumstances are described at length in Part I of this opinion, and the Court will not belabor the point by repeating them all here. Briefly and simply, plaintiff knew claimant intended to purchase 40 kilograms of cocaine with the defendant currency because its agents observed and were informed of claimant's actions in preparation for such purchase. Plaintiff knew claimant was using the defendant vehicle to facilitate this transaction because he was driving it, using familiar counter-surveillance techniques, to the location prearranged for the consummation of the transaction. Nothing has happened since plaintiff instituted this action to cast doubt on its probable cause to believe the defendants are forfeitable; on the contrary, since the commencement of this action, claimant was convicted of two offenses arising out of the same facts and circumstances as the seizure of the defendants.

■ Once plaintiff has met its preliminary burden of demonstrating probable cause, the burden shifts to claimant to show by a preponderance of the evidence that the defendants are not forfeitable. Claimant has not argued that he is an innocent owner, and given the facts, he cannot. *See e.g., United States v. One Parcel of Land,* 902 F.2d 1443, 1445 (9th Cir.1990) (per curiam) (innocent owner defense requires claimant to prove he did not know of or consent to the illegal use of the property). The common carrier defense under § 881(a)(4) is obviously inapplicable.

■ The only argument claimant makes on the merits as to why the defendants should not be forfeited is that he intended to use the money to purchase 30 cars at auction. *See* Claimant's Declaration. When Storment discovered the cash, claimant told him it was to be used to buy 30 cars, and claimant produced a California vehicle salesperson's license and his business card, from World Auto Sales. Claimant is estopped from making this argument by virtue of his criminal conviction in state court. In convicting claimant of possession of more than $100,000 in drug proceeds, the jury necessarily found that the defendant currency was intended for the purchase of drugs,[10] and it is undisputed that the fact that claimant was driving the defendant vehicle and that it contained the currency found to be drug proceeds constitutes sufficient grounds for forfeiture of the vehicle. *See United States v. One 1986 Ford Pickup,* 56 F.3d 1181, 1187 n. 7 (9th Cir.1995) (single use of vehicle to transport drug purchase money renders vehicle forfeitable as facilitating property); Claimant's Statement of Disputed and Undisputed Facts and Conclusions of Law at ¶ 7, p. 9.

Therefore, claimant's contentions in opposition to forfeiture are barred by collateral estoppel. As discussed more thoroughly in Part II.B, *supra,* under California law "[t]he criteria for the application of collateral estoppel are: (1) the prior conviction must have

10. At the October 23, 1995 hearing, claimant appeared to argue that to convict claimant of the drug proceeds charge, the jury was required to find only that $100,000.01 of the defendant currency was intended for the purchase of drugs. While this is technically true, it does not preclude summary judgment. Given the fact that all of the currency was bundled together and in the same suitcases, combined with the fact that the jury heard extensive evidence of claimant's intention to exchange the entire amount of currency for drugs and then convicted claimant of conspir-acy to transport or possess narcotics, the Court finds that it simply stretches credibility beyond the breaking point to say that claimant had one big pile of cash to be used to buy drugs and another big pile right next to it to be used to buy cars. In addition, claimant's only explanation with respect to the currency was that the entire amount was to be used to buy cars, and the jury clearly declined to believe this claim. Therefore, no rational jury could find that claimant has met his burden of proving the nonforfeitability of the defendant currency.

been for a serious offense so that the defendant was motivated to fully litigate the charges; (2) there must have been a full and fair trial to prevent convictions of doubtful validity from being used; (3) the issue on which the prior conviction is offered must of necessity have been decided at the criminal trial; and (4) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior trial." *Ayers v. City of Richmond,* 895 F.2d 1267, 1271 (9th Cir.1990) (*citing McGowan v. City of San Diego,* 208 Cal.App.3d 890, 256 Cal. Rptr. 537, 539 (1989)). The prior conviction obviously was for a serious offense, indeed two serious offenses. The Court has no reason to believe claimant's conviction is of doubtful validity. The issues on which plaintiff seeks to estop claimant—that the defendant currency was intended to be furnished in exchange for illegal drugs and that the defendant vehicle facilitated this intended exchange—were necessarily decided at his trial. Lastly, claimant was the defendant at the state court trial. Claimant had every incentive and opportunity at his trial to press his claim that the money was intended to be furnished in exchange for 30 cars rather than for 40 kilos of cocaine, so he cannot relitigate this claim here.

■ Since claimant thus cannot argue that the defendants were not intended to be used in or to facilitate an illegal drug transaction, he cannot raise a genuine issue of material fact to dispute plaintiff's claim that they were intended to be so used.[11] The Court therefore must grant plaintiff's motion

for summary judgment as to claimant Sergio Ramirez.

### III. FURTHER OBSERVATIONS

While the Court has drawn the conclusions in this case that it believes it is bound to draw, the Court believes it would be appropriate to register a few observations in closing.

■ Many courts and commentators have voiced their discomfort with civil in rem forfeiture. "Government confiscation of private property is disfavored in our constitutional system," *United States v. $191,910.00 in U.S. Currency,* 16 F.3d 1051, 1068 (9th Cir.1994), and it should be especially disfavored when the government stands to reap a large pecuniary benefit therefrom. *See id.* at 1069 & nn. 36–37.[12] The government already enjoys many significant benefits in "nominally civil" forfeiture proceedings, such as the shift of the burden of persuasion onto the claimant after the government meets the extremely low probable cause threshold,[13] the use of otherwise inadmissible evidence in making that showing, the absence of a right to counsel for the claimant, and of course, the use of its essentially limitless resources. *See $191,-910.00,* 16 F.3d at 1069.

In this case, the claimant was found guilty, but in some cases, the government takes large amounts of property in forfeiture when the claimant has been found innocent of the underlying crime. It is therefore important to hold the government to reasonable procedures, or at least to the procedures it has

11. Claimant argues that this Court cannot yet determine whether or not he could raise a genuine issue of material fact to defeat summary judgment, "[b]ecause the Government hasn't taken any discovery from Mr. Ramirez." Claimant's Supplemental Brief at 3. This contention is patently frivolous. Claimant may raise, and has raised, any argument he can think of at any time, and is under no obligation to wait for plaintiff to ask him a question before he can speak.

12. The *$191,910.00* Court canvassed the cases and commentary on civil forfeitures, and expressed particular concern with the government's "direct pecuniary interest" in the forfeiture of property. *Id.* at 1069 n. 37 (*quoting United States v. James Daniel Good Real Property,* —— U.S. ——, ——, 114 S.Ct. 492, 502, 126 L.Ed.2d 490 (1993)). In *James Daniel Good,* the

Supreme Court exposed a 1990 memo "in which the Attorney General urged United States Attorneys to increase the volume of forfeitures in order to meet the Department of Justice's annual budget target." —— U.S. at —— n. 2, 114 S.Ct. at 502 n. 2. The memo read in part: "We must significantly increase production to reach our budget target.... Every effort must be made to increase forfeiture income during the remaining three months of [fiscal year] 1990." *Id.*

13. "[T]he current allocation of burdens and standards of proof requires that the claimant prove a negative, that the property was not used in or to facilitate illegal activity, while the government must prove almost nothing." *United States v. $12,390.00,* 956 F.2d 801, 811 (8th Cir.1992) (Beam, J., dissenting in part).

said it will follow, when it seeks to take its citizens' property.

Perhaps the most obvious safeguard against irresponsible executive action is judicial review, and it is for this reason that the Court feels compelled to make these concluding comments. In this case, state law enforcement agents seized claimant's money and car. The property was apparently never lodged with any state court; indeed, it appears that no court even knew the BNE had the property. Then, for unknown reasons, and still unbeknownst to any court, the BNE decided to give the property to the federal government. Most probably, it was influenced by the fact that federal law is generally perceived as more receptive to forfeiture. So, after claimant's property had been sitting around the BNE for over a month, unsupervised by any court, the BNE informally transferred it to the FBI without so much as informing its owner, much less obtaining permission from a court. The federal government then held the property while its owner was convicted in state court, and now will return most of it to the state authorities that seized it. *See* 21 U.S.C. § 881(e)(1)(A).

The Fifth Circuit described the system at work here in unorthodox but eloquent terms: "NFL sportscasters might call the handoff from the Sheriff's Office to the DEA, followed by the lateral back from the DEA to the Sheriff's Office, a 'flea-flicker' play." *Scarabin v. Drug Enforcement Admin.*, 966 F.2d 989, 991–92 (5th Cir.1992). *See also United States v. One 1979 Chevrolet C–20 Van*, 924 F.2d 120, 122 (7th Cir.1991) ("A local police department may not take seized property and just pass it on as it pleases to the FBI in flagrant disregard of state laws mandating judicial authority for such turnovers. For its part, the Government does not seem to care how this type of property comes into its possession, as long as it ends up with it. The Government argues that local police departments give contraband to federal authorities for forfeiture as a routine, administrative procedure. It fails, however, to cite any authority for this questionable practice.").

One can hold law enforcement personnel in high regard and still be uneasy with the enormous potential for abuse inherent in allowing executive officers to hold huge sums of money and other valuable property for long periods of time and to pass this property back and forth among themselves for their mutual benefit without any judicial supervision. In this case, it appears that no court had even been informed that claimant's property was in the custody of executive officers until the federal government filed this action on October 1, 1993. Thus, from April 16, 1993 until October 1, 1993—five and one-half months—claimant's property existed in a sort of extralegal netherworld from which it likely could have disappeared altogether without any court finding out.

As the Court explained in Part II.A, *supra*, this does not destroy its jurisdiction. But with the deck so heavily stacked against the claimant, it should be obvious that "the burden on the government to adhere to procedural rules should be heavier than on claimants." *$191,910.00*, 16 F.3d at 1069 (*quoting United States v. $38,000.00 in U.S. Currency*, 816 F.2d 1538, 1547 (11th Cir.1987)). Here both governments flouted their procedural rules, cavalierly passing claimant's property between themselves outside of the glare of judicial oversight. What's more, neither government will suffer any adverse consequences as a result of this questionable conduct, and both will benefit from the bounty seized from claimant.

## IV. CONCLUSION

The Court GRANTS plaintiff the United States' motion for leave to amend its complaint to cite the correct subsection of 21 U.S.C. § 881. The Court DENIES claimant Sergio Ramirez's motions to dismiss for lack of jurisdiction, to suppress the defendants, for judgment on the pleadings, and for return of property. The Court GRANTS plaintiff's motion for summary judgment of forfeiture as to claimant Sergio Ramirez.

IT IS SO ORDERED.